IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HORNADY MANUFACTURING COMPANY, a Nebraska Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DOUBLETAP AMMUNITION, INC., a Utah Corporation,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING SUMMARY JUDGMENT<br><br><br><br>Case No. 2:11-CV-18 TS |

This matter is before the Court on Defendant DoubleTap Ammunition, Inc.'s ("Doubletap") Motion for Summary Judgment. Also before the Court is Plaintiff Hornady Manufacturing's ("Hornady") Alternative Rule 56(d) Motion for Stay Pending Discovery.

I.  BACKGROUND

Both Doubletap and Hornady sell high-end ammunition for various types of firearms. In 1997, Hornady began using the TAP trademark in connection with ammunition, and has registered its TAP marks with the Patent and Trademark Office.

1

In 2010, Hornady sent a cease and desist letter to Doubletap alleging that Doubletap's use of "tap" in its name was infringing Hornady's TAP trademark. After a failed settlement attempt, Hornady filed this action against Doubletap for trademark infringement, deceptive trade practice, and unjust enrichment.

Doubletap now asks the Court to grant summary judgment on Hornady's infringement claim based on laches. Doubletap argues that, based on three separate encounters between representatives from Doubletap and Hornady, Hornady knew or should have known that Doubletap was using "tap" long before this litigation commenced.

First, Doubletap alleges that Mike McNett, owner of Doubletap, met face-to-face with representatives from Hornady at an ammunition trade show while wearing a hat and t-shirt with the Doubletap logo. On the second occasion, Mr. McNett claims to have met with Hornady's president, Steve Hornady. Hornady has attached an affidavit from Steve Hornady stating that he has no recollection of such a meeting and that, to the best of his knowledge, no one on his staff recollects such a meeting. Hornady notes that the trade shows in question are attended by around 50,000 people, and that, even if it had occurred, a brief meeting at such a show between a Hornady official and Mr. McNett could not possibly have put Hornady on notice that Doubletap was using a tap mark.

Doubletap also alleges that in 2006, it received an email, purportedly from Steve Hornady, asking Doubletap to stop using the moniker "XTP" on Doubletap's website because XTP was trademarked by Hornady. Doubletap notes that in order to send this message, Hornady must have gone on to Doubletap's webpage, and specifically to the "contact us" page. Doubletap

offers proof that the page at that time conspicuously displayed the Doubletap name—inferring that Hornady should have been aware of Doubletap's use of the tap mark. Doubletap further notes that the email address to which Hornady's email was sent included the Doubletap moniker. Hornady responds by claiming that it is highly unlikely that Steve Hornady himself wrote the email, that the matter was resolved quickly, and that the brief encounter was not enough to put Hornady on notice that the tap mark was being used.

Finally, Doubletap argues that the statute of limitations has run on both the unjust enrichment claim and the deceptive trade practices claim.

## II. STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[1] The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.[2] "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[3] "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[4]

---

[1] *See* Fed.R.Civ.P. 56(a).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As movant, Doubletap bears the initial burden of production on a motion for summary judgment. The extent of this burden is measured in light of whether the movant will ultimately bear the burden of persuasion on an issue at trial.

> If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial . . . . Such an affirmative showing shifts the burden of production to the party opposing the motion.[5]

Because Doubletap would bear the burden of persuasion on the affirmative defense of laches at trial, Doubletap's evidence, treated as though it were uncontested, must meet the standard for a directed verdict for the Court to grant summary judgment. Fed.R.Civ.P. 50 allows the Court to direct a verdict "if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." If Doubletap meets this burden, Hornady

> then must either establish the existence of a triable issue of fact under Fed.R.Civ.P. 56(e) or explain why he cannot . . . under Rule 56(f). Conclusory allegations made by a non-movant will not suffice. Instead, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein.[6]

---

[5]*Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 947 (10th Cir. 1990) (quoting *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

[6]*Id.* (internal citations and quotation marks omitted).

III. DISCUSSION

A. LACHES

"In order to prove the affirmative defense of laches, the defendant must demonstrate that there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by that delay."[7] "By its very nature, the inquiry is fact intensive and depends on the unique circumstance of each case."[8] "The primary issue . . . is when [the plaintiff] knew or should have known of [the defendant's] conduct."[9] "[T]he law is well settled that where the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry."[10] Hornady denies knowledge of the basis for its infringement claim before 2010. The Court must determine whether any of Doubletap's alleged encounters with Hornady prior to 2010 provided the basis for such a claim.

There is a disagreement among courts over the stringency of the constructive notice standard. One line of cases holds that, in order for a defendant to prove constructive knowledge, evidence must be presented showing "that it would have been inconceivable that [the plaintiff] would have been unaware of [the purported infringement.]"[11] Other courts have confined the

---

[7] *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

[8] *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Wisan*, 773 F. Supp. 2d 1217, 1235 (D. Utah 2011).

[9] *Gen. Motors Co. v. Urban Gorilla, LLC*, 2010 WL 5395065, at *20 (D. Utah Dec. 27, 2010).

[10] *Johnston v. Standard Min. Co.*, 148 U.S. 360, 370 (1893).

inconceivability standard to the calculation of *actual* knowledge,[12] rendering facts showing inconceivability sufficient, but not necessary, to show constructive notice.[13] The Tenth Circuit has not addressed the inconceivability issue. But where, on summary judgment, constructive notice is claimed by a party that would bear the burden of persuasion at trial, the initial burden of proof essentially imposes an inconceivability standard. To meet its initial burden of production, Doubletap must show that, based on its evidence (treated as though it is uncontested), no reasonable juror could find that Hornady did not know about Doubletap's use of the tap mark. In other words, it must be "inconceivable" that Hornady could have remained in the dark as to the alleged infringement.

1. TRADE SHOW MEETINGS

Doubletap argues that it had contact with Hornady at the "Shot Show," an ammunition trade show, through Doubletap's president, Mike McNett. McNett claims to have been wearing clothing with the Doubletap logo plainly visible during the contact. Based on these facts alone, it

---

[11] *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1069 (D. Or. 2008) (internal quotation marks and citation omitted); *see also Omega Eng'g v. Omega Shielding*, 1998 WL 35256542, *3 (D. Conn. Mar. 31, 1998) (requiring "overwhelming circumstantial evidence . . . that plaintiff was aware of defendant's use of the contested mark" to find that a defendant had constructive knowledge).

[12] *Loma Linda Food Co. v. Thomson & Taylor Spice Co.*, 47 C.C.P.A. 1071, 1075 (C.C.P.A. 1960).

[13] *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1110 (N.D. Cal. 2008); *see also Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 (5th Cir. 1982) (noting that the "inconceivable" standard is more restrictive than the "knew or should have known" standard).

seems unlikely that Doubletap has met its burden of production.  However, even assuming it has, Hornady has submitted sufficient evidence to place the facts in dispute.

Defendant has attached the affidavit of Steve Hornady, which states that no one at the company recalls such a contact.  Hornady also notes that 50,000 people attend the shot show and that it is therefore highly unlikely that a Hornady representative would have paid enough attention to McNett's attire during a brief encounter to apprehend the trademark implications of the attire.

The Court finds that the alleged contact does not provide adequate support for a finding of summary judgment on laches because there is a dispute as to whether the contact occurred, how long it lasted, who it was with, etc.  In order to determine whether the contact provided notice of the alleged infringement, those factual disputes must first be resolved.

Doubletap alleges that it again had contact with Hornady at the 2004 "Shot Show," this time with Steve Hornady.  Hornady again provides Steve Hornady's sworn testimony that he recalls no such meeting.  For the same reasons, the Court finds that the material facts are in dispute and there is insufficient evidence to support summary judgment on Doubletap's laches claim.

2. THE 2006 EMAIL

Doubletap has provided evidence showing that in 2006, a representative from Hornady—purportedly Steve Hornady himself—sent an email from Steve Hornady's account to Doubletap regarding an alleged trademark infringement unrelated to the tap mark.  The representative contacted Doubletap through Doubletap's website's "contact us" page.  Doubletap

has shown that the "contact us" page clearly displayed the Doubletap logo, and allege that a visit to the page by a representative should have put Hornady on notice about Doubletap's use of the tap mark. Additionally, Doubletap notes that the email address at which the email was received included the Doubletap moniker. Phone records also show a call between Hornady and Doubletap during the same time.

Hornady responds that it is highly unlikely that Steve Hornady sent the email. This statement on its own does not properly address Doubletap's factual assertions, since others besides Steve Hornady could have received notice on behalf of the company. The Second Circuit, addressing the question of whether an agent's knowledge of a purported infringement could be imputed to the principal, held that "[i]n order to impute an agent's knowledge to a principal in a particular transaction, it must be shown that the agent at some time had some duties to perform on behalf of the principal with respect to the transaction, although the agent need not have acquired his knowledge in connection with those duties."[14] In that case, there was no evidence that the agent through which defendant wished to impute knowledge to plaintiff had a duty to detect trademark infringement. Here, since the person who sent the email was obviously engaged in enforcing Hornady trademarks, it seems quite likely that the person had such duties, and Hornady makes no allegation that the person who sent the email did not have such duties.

However, the Court finds that Doubletap's facts alone cannot establish that Doubletap is entitled to judgment as a matter of law. Doubletap has submitted no evidence about who made the contact, how much examination of Doubletap's website that person performed, or what

---

[14] *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 363 (2d Cir. 1959).

8

protocol that person would have been following that may or may not have led to the discovery of the tap mark. On the bare uncontested fact that someone from Hornady contacted someone from Doubletap through its website, a reasonable juror could find that Hornady could reasonably have remained unaware of Doubletap's use of the tap mark—in other words, the evidence presented does not make it inconceivable that Hornady could not know about the purported infringement. By failing to make such a showing, Doubletap has failed to meet its initial burden of production on this claim.

In light of the foregoing, the Court finds that summary judgment on Doubletap's laches claims is inappropriate because there are disputed issues of material fact regarding the 2003 and 2004 trade show meetings, and because Doubletap has not met its initial burden of production as to the 2006 email.

B.    UNJUST ENRICHMENT AND DECEPTIVE TRADE PRACTICES CLAIMS

Doubletap asks the Court to grant summary judgment on its statute of limitations defenses to Hornady's unjust enrichment and deceptive trade practices claims. Doubletap's request is predicated on an assumption that the Court can pinpoint a starting date on which Hornady became aware of the basis for its claims, and that, based on that starting date—"2006 at the latest"—the statute of limitations has run for both unjust enrichment and deceptive trade practices. As noted above, based on the evidence presented, it is not possible for the Court to pinpoint a date on which Hornady became aware of the potential trademark infringement. "[I]f

the statute of limitations depends on disputed facts, then summary judgment is inappropriate."[15]

Accordingly, the Court will deny summary judgment on these claims.

C.      MOTION TO STAY

Hornady also filed a motion asking the Court to stay Doubletap's summary judgment motion until Hornady could conduct more discovery on the laches and statute of limitations claims. Because those claims are resolved in Hornady's favor, the Court will deny the Motion as moot.

IV. CONCLUSION

It is therefore

ORDERED that Doubletap's Motion for Summary Judgment (Docket No. 18) is DENIED. It is further

ORDERED that Hornady's Motion to Stay (Docket No. 28) is DENIED AS MOOT. It is further

ORDERED that the hearing set on these Motions, currently scheduled for January 24, 2012, at 2:30 pm, is STRICKEN.

DATED   December 15, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[15] *Wolf v. Preferred Risk Life Ins. Co.*, 728 F.2d 1304, 1306 (10th Cir. 1984).