IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HORNADY MANUFACTURING COMPANY, INC., a Nebraska Corporation, <br><br> Plaintiff, <br><br><br> vs. <br><br><br> DOUBLETAP, INC., a Utah Corporation, <br><br> Defendant. | **SEALED** MEMORANDUM DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT <br><br><br><br><br> Case No. 2:11-CV-18 TS |

This matter is before the Court on Defendant Doubletap, Inc.'s ("Doubletap") Motion for Summary Judgment and Plaintiff Hornady Manufacturing Company, Inc.'s ("Hornady") Sealed Motion for Summary Judgment.[1]  Through their motions, the parties move for judgment as a matter of law on the issue of whether Doubletap has infringed Hornady's TAP trademark.  For the reasons discussed more fully below, the Court will grant Doubletap's Motion and deny Hornady's Motion.

---

[1]Docket Nos. 129, 131.

## I.  BACKGROUND

Doubletap and Hornady sell ammunition.  In 1997, Hornady began using the trademark "TAP" in connection with its marketing of ammunition products.  In 1999, the United States Patent and Trademark Office ("USPTO") granted Hornady a federal registration for its TAP mark under Registration No. 2,259,161.  In or about 2004, the TAP mark achieved enhanced incontestable status.  Since that time, Hornady has continued to market its TAP mark and has obtained registration for other marks that incorporate the TAP mark.

Hornady's TAP mark consists of the word "TAP".  The TAP mark is an acronym for "Tactical Application for Police" and is often used in conjunction with that message.  The TAP mark frequently appears within a shield, similar to that used by most law enforcement officers. The TAP mark employs bold dark letters, usually placed against a distinct red background.



Doubletap came into existence in 2003.  At that time, Doubletap launched its website, doubletapammo.com, and began selling ammunition products under the Doubletap name.

Doubletap's founder, Michael McNett, chose the name Doubletap based on the familiarity of the ammunition consumer with the term "double tap," meaning to strike a target twice in rapid succession.

Doubletap uses variations of a similar mark on its marketing materials.  Doubletap's branding always includes the phrase "DOUBLETAP," sometimes in conjunction with the word "McNett's," and other times with a space between the words "DOUBLE" and "TAP," and inclusion of the word "AMMUNITION."  Doubletap's mark is set against a dark blue or black background, with the words printed in silver, gold, or white.





In 2010, Hornady sent a cease and desist letter to Doubletap alleging that Doubletap's use of the word TAP in its name was infringing Hornady's TAP mark.  In January 2011, Hornady filed this action against Doubletap.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[2]

> The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.  If the moving party does not bear the burden of proof at trial on a dispositive issue, that party may make such a showing simply by indicating to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[3]

In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[4]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[5]

---

[2]Fed. R. Civ. P. 56(a).

[3]*Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986)).

[4]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[5]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

III.  DISCUSSION

Hornady brings the following causes of action against Doubletap: (1) trademark infringement under § 43(a)(1)(A) of the Lanham Act; (2) trademark infringement under § 32 of the Lanham Act; (3) common law trademark infringement; (4) false representation as to the source, sponsorship, or certification of goods in violation of Utah Code Ann. § 13-11A-3; and (5) unjust enrichment.  Each of Hornady's causes of action are premised on its allegation that Doubletap infringed Hornady's rights in its TAP mark.[6]

"The Lanham Act prohibits, in connection with any good or service, the unauthorized use or misleading representation of 'any word, term, name, symbol, or device' in a way that 'is likely to cause confusion, or to cause mistake, or to deceive.'"[7]  Thus, to prove its trademark infringement claims, Hornady must show that its TAP Mark is protectable, that Doubletap "used the trademark 'in connection with goods or services,'"[8] and that Doubletap's use "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association

---

[6]*See Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 558 (10th Cir. 1984) (holding that the likelihood of confusion test applicable to 15 U.S.C. § 1114(1) "is also applicable to Amoco's claim of false designation of origin, 15 U.S.C. § 1125, its state claims of infringement, Utah Code Ann. § 70-3-13 (1953), and its common law claims of unfair competition and deceptive trade practices"); *see also Rawlings v. Rawlings*, 240 P.3d 754, 763 (Utah 2010).

[7]*John Allan Co. v. Craig Allen Co. LLC.*, 540 F.3d 1133, 1137–38 (10th Cir. 2008) (quoting 15 U.S.C. § 1125(a)(1)(A)).

[8]*Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting 15 U.S.C. § 1125(a)(1)).

of such person with another person, or as to the origin, sponsorship, or approval of his or her

goods, services, or commercial activities by another person."[9]

In this case, Hornady's TAP mark is a registered mark that has achieved incontestable

status.  As such, Hornady's TAP mark registration is "conclusive evidence of the validity of the

registered mark and of the registration of the mark, of the registrant's ownership of the mark, and

of the registrant's exclusive right to use the registered mark in commerce."[10]  Doubletap does not

assert that any of the defenses or defects to this presumption of validity apply.[11]  Rather, "[f]or

purposes of this motion only, Doubletap does not dispute that Hornady's so-called 'TAP' mark

. . . is protectable."[12]  Nor does Doubletap appear to dispute that it has used Hornady's TAP mark

in connection with goods or services.[13]  Thus, the parties' motions turn on whether Doubletap's

use of the TAP mark is likely to cause confusion.

"Likelihood of confusion forms the gravamen for a trademark infringement action."[14]

"The party alleging infringement has the burden of proving likelihood of confusion."[15]  "Though

---

[9]15 U.S.C. § 1125(a)(1)(A).

[10]*Id.* § 1115.

[11]*See id.*

[12]Docket No. 129, at vii.

[13]*See id.*

[14]*King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999) (citing 15 U.S.C. §§ 1114(1), 1125(a)).

[15]*Utah Lighthouse Ministry*, 527 F.3d at 1055 (citing *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238–39 (10th Cir. 2006)).

6

likelihood of confusion is a question of fact, it is amenable to summary judgment in that 'courts

retain an important authority to monitor the outer limits of substantial similarity within which a

jury is permitted to make the factual determination whether there is a likelihood of confusion.'"[16]

> To determine whether a likelihood of confusion exists, this court examines six,
> non-exhaustive, factors: "(1) the degree of similarity between the marks; (2) the
> intent of the alleged infringer in adopting the mark; (3) evidence of actual
> confusion; (4) similarity of products and manner of marketing; (5) the degree of
> care likely to be exercised by purchasers; and (6) the strength or weakness of the
> marks."[17]

"No one factor is dispositive, and the final determination of likelihood of confusion must be

based on consideration of *all* relevant factors."[18]  "[T]he key inquiry is whether the consumer is

'likely to be deceived or confused by the similarity of the marks.'"[19]

A.      DEGREE OF SIMILARITY

        "The degree of similarity between marks rests on sight, sound, and meaning."[20]  These

factors are examined "in the context of the marks as a whole as they are encountered by

consumers in the marketplace."[21]

---

[16]*Id*. (quoting *Universal Money Ctrs. v. Am Tel. & Tel.*, 22 F.3d 1527, 1530 n.2 (10th Cir. 1994).

[17]*John Allan*, 540 F.3d at 1138 (quoting *Sally Beauty Co.*, 304 F.3d at 972).

[18]*Heartsprings, Inc. v. Heartsprings, Inc*., 143 F.3d 550, 554 (10th Cir. 1998) (citing *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986) [hereinafter referred to as "*Beer Nuts II*"]).

[19]*Id*. (quoting *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 780 (1992)).

[20]*Sally Beauty Co.*, 304 F.3d at 972 (internal citation omitted).

[21]*Beer Nuts II*, 805 F.2d at 925.

This court must determine whether the allegedly infringing mark will confuse the public when singly presented, rather than when presented side by side with the protected trademark.  In so doing, similarities are weighed more heavily than differences, particularly when the competing marks are used in virtually identical products packaged in a similar manner.[22]

Here, the parties package their products in boxes that appear to be of similar size and manufacture.  However, the color scheme and layout of the packaging is dissimilar.  Hornady's packaging is a distinct red color, with black and white wording.  Aside from the TAP mark and product name, the box is covered in descriptions of the product enclosed.[23]  Doubletap's packaging is blue and black, with gold lettering.  The cover of the box is simple, with no wording beyond Doubletap's mark and the term "Made with Pride in the U.S.A." in small lettering below an image of the American flag.

The parties' marks are also dissimilar.  Both products carry the word "TAP," but the placement and use of the word varies greatly.  Hornady uses its TAP mark as a stand alone mark within a shield and crest, similar to that used by police officers.  Further, Hornady often prominently displays the acronymic nature of its TAP mark by providing a vertically descending display of the phrase "Tactical Application Police."

---

[22]*Sally Beauty Co.*, 304 F.3d at 972 (internal citations omitted).

[23]Hornady submitted a declaration in support of its Motion for Summary Judgment that this Court previously found inadmissible.  *See* Docket No. 275.  Attached as exhibits to that declaration were product packaging for other TAP products, including a TAP FPD product package that included a dark blue background and red TAP shield.  Even were the Court to consider the exhibit as admissible, the minor differences in the packaging of other TAP marks does not change its analysis in this case.

8

Doubletap's mark is placed in the center of an oval, with equal emphasis on the entire term "DOUBLETAP."  The mark often contains two small round bullet holes, providing a visual demonstration of the meaning of the term.  Other times it contains the word "McNett's" directly above the term "DOUBLETAP."  Hornady makes much of the slight differences in prior packaging used by Doubletap that included a space between the words "DOUBLE" and "TAP" and the inclusion of the word ammunition.[24]  These minor differences, however, do not outweigh the visual differences in the marks.

The sound of the marks is also different.  The term "DOUBLETAP," or even "DOUBLE TAP AMMUNITION," does not sound similar to "TAP."  Hornady would have the Court shorten Doubletap's mark or place more emphasis on the "TAP" section of the mark.  This approach was specifically rejected by the Tenth Circuit in *Sally Beauty Co., Inc. v. Beautyco, Inc.*[25]  That case involved the comparison of the mark "Generic Value Products" with the mark "GENERIX."  On appeal, the court found that the district court erred in its consideration of this subfactor "by shortening 'Generic Value Products' to simply 'Generic.'"[26]  The court noted a lack of "authority which would permit the shortening of the trademark for the likelihood of confusion analysis."[27]

---

[24]*See* Docket No. 131 Ex. 6.

[25]304 F.3d 964.

[26]*Id*. at 973.

[27]*Id.*

To the extent Hornady's argument is that the word "TAP" takes precedence over the other words in Doubletap's mark, the Court is not persuaded.[28]  The word "TAP" is given no position of prominence in the visual elements of Doubletap's mark.  Hornady's reference to other members of its alleged "TAP family of marks" in support of such an argument is similarly unavailing.  None of the marks relied on by Hornady bear any aural similarity to Doubletap's mark.

The meaning of Hornady's TAP mark is also distinct from that of Doubletap.  Hornady does not dispute that its TAP mark is an acronym for Tactical Application for Police.  Hornady's product packaging, including the distinctive TAP shield, reinforces its intended meaning of TAP.  The packaging is replete with the Tactical Application for Police statement in connection with the TAP acronym.  Doubletap's mark, on the other hand, references a common term of art to gun owners.  "[T]he common term 'double tap' describes an art of two shots on target."[29]  Doubletap's packaging contains the word "DOUBLETAP," often in connection with two small bullet holes as visual innuendo.  Given these dissimilarities, the Court finds that the parties' marks convey different meanings.

Taken as a whole, the Court finds that the differences in sight, sound, and meaning overwhelm any similarities between the marks.  On this factor, the Court finds of particular import the differences in meaning of the two marks and the distinct manner in which the parties'

---

[28]*See Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1567, 1570–71 (Fed. Cir. 1983).

[29]Docket No. 131 Ex. 3, at 5.

present their marks.  Given these marked dissimilarities, the Court finds that this factor weighs

heavily in favor of Doubletap.

B.      INTENT

"The proper focus under this factor 'is whether defendant had the intent to derive benefit

from the reputation or goodwill of plaintiff.'"[30]  "One who adopts a mark similar to another

already established in the marketplace does so at his peril, because the court presumes that he can

accomplish his purpose: that is, that the public will be deceived.  All doubts must be resolved

against him."[31]  Where there is no direct evidence of intent, "deliberate adoption of a similar

mark may lead to an inference of intent to pass off goods as those of another which in turn

supports a finding of likelihood of confusion."[32]

Hornady argues that, although it has no direct evidence of bad intent, a jury could infer

Douletap's intent to derive the benefit and goodwill of Hornady's TAP mark because

Doubletap's founder has been aware of Hornady's products since he was a boy and because, at

the time of its founding, Doubletap intended to use a Hornady bullet in one of its ammunition

loads.  Hornady also argues that bad faith can be inferred because, despite its awareness of

Hornady's TAP mark at least as early as 2006 Doubletap continued using its mark and, from the

year 2010 forward, Doubletap increased the amount it spent on marketing.

---

[30]*King of the Mountain*, 185 F.3d at 1091 (quoting *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485 (10th Cir. 1987)).

[31]*Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir. 1983).

[32]*Beer Nuts II*, 805 F.2d at 927.

To draw an inference that Doubletap intended to pass off its products as Hornady's, this Court must first find that Doubletap deliberately adopted a mark similar to Hornady's established TAP mark.  Because the Court finds that the parties' marks are not similar, such an inference is not warranted.  Further, evidence of the amounts Doubletap spent on marketing after 2010 is irrelevant to the determination of Doubletap's intent in adopting its mark.  Even were the Court to consider such evidence, it could just as easily be read to support a conclusion that Doubletap is relying on its own publicity and reputation, and not on that of Hornady.[33]

Doubletap's founder, Michael McNett, testified that at the time he formed Doubletap he had never heard of Hornady's TAP mark.[34]  According to Mr. McNett, he

> decided to come up with a name that was reflective of something in the industry. And the common term 'double tap' describes an art of two shots on target.  And since we were doing defensive ammunition to start off with, I wanted—I thought that that fit the bill quite well.  And so toward the end . . . of 2002, we decided on the—that we would use DoubleTap.[35]

Nothing in Mr. McNett's testimony supports an inference that his decision to use Doubletap as his company and brand name was motivated by a desire to derive benefit from the reputation or goodwill of Hornady's TAP mark.

Because of the lack of similarity between the parties' marks and the lack of direct evidence of intent, the Court finds that, even viewing the evidence in the light most favorable to Plaintiff, this factor weighs in Doubletap's favor.

---

[33]*See Universal Money*, 22 F.3d at 1527.

[34]Docket No. 131 Ex. 3.

[35]*Id*. at 5.

C.      ACTUAL CONFUSION

"Although plaintiff need not set forth evidence of actual confusion to prevail in a trademark infringement action, actual confusion in the marketplace is often considered the best evidence of likelihood of confusion."[36]  "Such evidence may be introduced through surveys, although their evidentiary value depends on the methodology and questions asked.  Evidence of actual confusion does not create a genuine issue of fact regarding likelihood of confusion if it is de minimis."[37]

Hornady has provided evidence that it argues demonstrates proof of actual consumer confusion.  Doubletap contends that this evidence does not demonstrate actual confusion because it is inadmissible and because it is de minimis.  The Court previously addressed the majority of Doubletap's arguments on admissibility and incorporates its prior rulings into this opinion.[38]

The principal evidence on which Hornady relies is a declaration of one of its employees, Ms. Kathy McHale.  Ms. McHale testified that: "In or around 2009-2010, [she] received approximately half a dozen calls from law enforcement officers and agencies asking whether [Hornady] makes [Doubletap's] ammunition or whether [Doubletap] is one of [Hornady's] brands."[39]  Ms. McHale also indicated that "[i]n March 2012, [she] received a letter from the

---

[36]*King of the Mountain*, 185 F.3d at 1092 (internal quotation marks and citations omitted).

[37]*Sally Beauty Co.*, 304 F.3d at 975 (citing *Universal Money*, 22 F.3d at 1534 n.3, 1535).

[38]*See* Docket Nos. 261, 273, 275.

[39]*See* Docket No. 228 Ex. 3.

Scott County Sherriff's [sic] Office in Arizona."[40]  The Scott County letter thanks Hornady for providing it with 59 grain Doubletap ammunition to sample.[41]  Ms. McHale responded by letter to the Scott County Sheriff, indicating that Hornady does not manufacture Doubletap ammunition and inquiring as to what the Scott County Sheriff thought of the ammunition Hornady had sent.[42]

In addition, Hornady recently submitted a supplemental affidavit from its Marketing Director, Neil Davies.  The affidavit includes a customer inquiry through Hornady's Facebook page that demonstrates that a Hornady customer was under the mistaken belief that Hornady "owned Double Tap."[43]  Also attached to Mr. Davies's affidavit, is a discussion from a chat forum regarding Hornady and Doubletap ammunition.  It is clear from the dating on the forum thread that the discussion occurred in 2006, well before the close of discovery in this case.  While the Court will consider the Facebook inquiry for the limited purposes allowed under Federal Rule of Civil Procedure 6(c)(2), the Court will not consider the discussion from the chat forum, as it occurred well before the close of discovery in this case and Hornady has provided no grounds for its untimely production.[44]

---

[40]*Id.*  The letter in question is actually from the Scott County Sheriff's Office in Arkansas.

[41]*See id.*

[42]*Id*.

[43]*See* Docket No. 144 Ex. 1.

[44]*See Kern v. Gas Transmission Co. v. 6.17 Acres of Land, More or Less, in Salt Lake Cnty., Utah*, 156 F. App'x 96, 101–02 (10th Cir. 2005) (unpublished); *Wilson v. Bradlees of New Eng., Inc*., 250 F.3d 10, 20–21 (1st Cir. 2001) (affirming exclusion of videotapes produced 43 days and six months after discovery ended).  The Court notes that even were it to consider this

In *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*,[45] the court considered the weight to be given customer inquiry evidence of actual confusion.  In that case, both parties were manufacturers of blue jeans.  Plaintiff, the owner of the trademark for Jordache jeans, brought suit against a manufacturer that identified its blue jeans for larger women with a smiling pig and the word "Lardashe" on the seat of the pants.[46]  A witness for the plaintiff testified that he received multiple calls inquiring whether Lardashe jeans were affiliated with Jordache.[47]  The district court held that the evidence was inadmissible hearsay.  On appeal, the Tenth Circuit held that, while admissible, "even when combined with other evidence[,] inquiries to the plaintiff about the source of a product are of comparatively little value."[48]

Here, all of the evidence submitted by Hornady is a form of customer inquiry.  The half a dozen to a dozen phone calls received by Ms. McHale are similar to those received by the witness for the plaintiff in *Jordache*.  The Facebook inquiry attested to by Mr. Davies is a variation of the same.  In light of the holding in *Jordache*, this evidence is entitled to little

---

evidence as if properly submitted it would not change the analysis or outcome in this case.

[45]828 F.2d 1482.

[46]*See id.* at 1483–84.

[47]*Id*. at 1487.

[48]*Id*.

weight.  The letter from the Scott County Sheriff, even if not sent in error,[49] is insufficient to buttress the relative weakness of Hornady's remaining evidence.

Moreover, the undisputed facts of this case demonstrate that although the Doubletap mark has been on the market since 2003, in the intervening ten years, only a handful of instances of actual confusion have occurred.  As such, this case is easily distinguished from those cases where courts have found customer inquiries to be compelling evidence of actual confusion.[50] Accordingly, the Court finds that this evidence is entitled to little weight, and is, therefore, de minimis.

The parties also dispute the import of a customer survey commissioned by Doubletap.  As indicated, consumer surveys can be used to show actual confusion.  "However, the evidentiary value of such surveys depends on the relevance of the questions asked and the technical adequacy of the survey procedures."[51]  "In evaluating similarity, it is axiomatic in trademark law that 'side-by-side' comparison is not the test."[52]  "A prospective purchaser does not ordinarily carry a sample or specimen of the article he knows well enough to call by its trade name, he necessarily

---

[49]Doubletap belatedly submitted into evidence a declaration from the Scott County Sheriff's Department indicating that the letter sent to Hornady was the result of a clerical error rather than any confusion as to the identity of Doubletap and Hornady.  *See* Docket No. 209.

[50]*See Heartland Animal Clinic, P.A. v. Heartland SPCA Animal Med. Ctr., LLC*, 2012 WL 5935970, at *4–5 (10th Cir. Nov. 28, 2012) (unpublished) (customer inquiries found to be compelling evidence of actual confusion where confused inquiries began almost immediately after competitors adoption of plaintiff's mark).

[51]*Jordache*, 828 F.2d at 1487 (citing *Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 75 (10th Cir. 1958)).

[52]*Beer Nuts*, 711 F.2d at 941 (internal quotations marks and citations omitted).

depends upon the mental picture of that which symbolizes origin and ownership of the thing desired."[53]  "Therefore, the court must determine whether the alleged infringing mark will be confusing to the public when singly presented."[54]

Doubletap's survey began by showing participants a photo of a box of Doubletap's ammunition.  After viewing the image of Doubletap's ammunition, the participants were shown an image of Hornady's ammunition packaging and an image of a control brand of ammunition. The participants were then asked to answer whether the packages were:

> (1) of the same company or owned by the first company shown; (2) affiliated with the first company shown[;] (3) had permission from the first company shown to use this name on their website[;] or (4) had no affiliation or connection to the first website shown, or that they were unsure.[55]

In short, the participants, without any other familiarity with the brands, were asked to draw a conclusion as to the source of the products based upon a quick comparison of the marks and packaging.

---

[53]*Avrick v. Rockmont Envelope Co.*, 155 F.2d 568, 573 (10th Cir. 1946).

[54]*Beer Nuts*, 711 F.2d at 941 (citing *Avrick*, 155 F.2d at 572–73; *Am. Home Prod. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 107 (2d Cir. 1978); *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976); *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 382 (7th Cir. 1976), *cert. denied*, 429 U.S. 830 (1976)).

[55]Docket No. 78 Ex. 1, at 6.

Doubletap's survey is a variation on the "side-by-side" comparison test that has been rejected as bearing "little resemblance to the actual workings of the marketplace."[56]  As such, the Court ascribes the results of the survey little weight.

In sum, the Court finds that the evidence supplied by the parties as to actual confusion is de minimis.  Because Hornady failed to meet its burden of production,[57] the Court finds that this factor weighs in favor of Doubletap.[58]

D.       SIMILARITY OF PRODUCTS AND MARKETING

"'The greater the similarity between the products and services, the greater the likelihood of confusion.'"[59]  "This court has previously analyzed this factor by separately considering (1) the similarity of products and (2) the similarity in the manner of marketing the products."[60]

The parties offer the same product, ammunition.  Nevertheless, Doubletap asserts that its product is distinct from that provided by Hornady because it offers a superior product.  However, both parties have submitted evidence that they carry a diverse line of ammunition.  At one point,

---

[56]*Jordache*, 828 F.2d at 1488; *see also Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980) (holding that "[i]t is axiomatic in trademark law that 'side-by-side' comparison is not the test").

[57]*Utah Lighthouse Ministry*, 527 F.3d at 1055 (citing *Australian Gold*, 436 F.3d at 1238–39).

[58]*Sally Beauty Co.*, 304 F.3d at 971 (citing *Celotex Corp.*, 477 U.S. at 323, 325).

[59]*Universal Money*, 22 F.3d at 1532 (quoting *Exxon Corp. v. Tex. Motor Exch.*, 628 F.2d 500, 505 (5th Cir. 1980)).

[60]*Sally Beauty Co.*, 304 P.3d at 974 (citing *Universal Money*, 22 F.3d at 1532–33).

Doubletap even incorporated Hornady bullets in its ammunition.  Thus, based on the evidence submitted, the Court finds that the similarities in the parties' products outweigh any differences.

With respect to the manner of marketing, the parties both market heavily through the Internet, but their immediate customer bases differ somewhat.  Hornady primarily markets to law enforcement and ammunition retailers.  Doubletap, on the other hand, markets both to retailers and to direct purchasers.  It is undisputed, however, that both parties run ads in the same magazines and attend the same ammunition expos.  There is also evidence that Doubletap recently began marketing to law enforcement agencies, which are among Hornady's target market.  Thus, while there are some minor differences in the parties' marketing strategies, there is sufficient similarity that this factor weighs in Hornady's favor.

E.      DEGREE OF CARE

"When consumers exercise a high degree of care in selecting [a product], the likelihood of confusion shrinks."[61]  "The relevant inquiry focuses on the consumer's degree of care exercised at the time of purchase."[62]  "[I]tems purchased on impulse are more likely to be confused than expensive items, which are typically chosen carefully."[63]

The product at issue is ammunition.  The parties' products range in price from 15 to 40 dollars per box for Hornady's products and from 30 to over 100 dollars per box for Doubletap's products.  Both parties market their products through the Internet and retailers.  Further, both

---

[61] *Vail Assocs., Inc. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 872 (10th Cir. 2008).

[62] *Sally Beauty Co.*, 304 F.3d at 975 (citing *Universal Money*, 22 F.3d at 1533).

[63] *Id*. (citing *Beer Nuts II*, 805 F.2d at 926).

market their products to professionals and individuals looking for a specialty ammunition load.

Mr. McNett testified that:

> Purchasers of Doubletap's ammunition products are generally discerning customers that are careful to select only the highest quality of ammunition. Purchasers of high-end ammunition such as Doubletap's products carefully scrutinize technical aspects of ammunition's performance before purchase, including velocity, penetration, accuracy, bullet expansion, muzzle flash, feed reliability, and the like.[64]

Mr. McNett's testimony is supported by Hornady's marketing materials that demonstrate the discerning nature of its clientele.[65]

While it is not necessarily expensive, ammunition is not a low cost item like a bag of snack peanuts,[66] or inexpensive face cream.[67] Nor is it a product that otherwise lends itself to impulse purchasing. Ammunition loads, calibers, and specifications vary greatly. The parties are not manufacturing one-size fits all checkout-line trinkets. The parties market their product as a reliable defensive load—a product designed to be used in defense of one's life.[68] It is doubtful that such ammunition consumers purchase the parties' products on impulse.

---

[64]Docket No. 129 Ex. F, at 6.

[65]*See id.* Ex. H.

[66]*See Beer Nuts II*, 805 F.2d at 926–27.

[67]*Sally Beauty Co.*, 304 F.3d at 975.

[68]*See* Docket No. 129 Ex. H, at 10 ("Today's law enforcement professional must be prepared to face a greater variety of critical situations than ever before. That's why our Law Enforcement Group developed TAP, a new line of police ammunition that is as street ready as the officer who carries it.").

On the whole, even viewing the evidence in the light most favorable to Hornady, the Court finds that consumers are likely to exercise a high degree of care in purchasing the parties' products.  Therefore, this factor weighs in favor of Doubletap.

F.      STRENGTH OF MARK

The final factor pertains to the strength of Hornady's mark.  "Strength consists of both conceptual strength, which refers to the placement of the mark along the distinctiveness spectrum, and commercial strength, which refers to the marketplace recognition value of the mark."[69]

Doubletap asserts that Hornady's mark is conceptually weak because it is descriptive and Hornady has failed to provide admissible evidence to demonstrate commercial strength.  Hornady contends that because its mark has attained incontestable status it is conceptually strong.  In addition Hornady contends that the amounts it has spent on marketing and the years it has been in business demonstrate the commercial strength of its TAP mark.

Turning first to conceptual strength, a mark attaining incontestable status does not "dictate the conclusion that the mark is strong."[70]  "The categories of trademarks in ascending order of relative strength are: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful."[71]

---

[69]*Utah Lighthouse Ministry*, 527 F.3d at 1056 (citing *King of the Mountain*, 185 F.3d at 1093).

[70]*Vail Assocs.*, 516 F.3d at 867 (internal quotation marks and citation omitted).

[71]*Id*. at 975–76 (citations omitted).

A mark is generic if it is a common description of products and refers to the genus of which the particular product is a species. A mark is descriptive if it describes the product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put. A mark is suggestive if it merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods. An arbitrary mark applies a common word in an unfamiliar way. A fanciful mark is not a real word at all, but is invented for its use as a mark.[72]

As referenced earlier, Doubletap's president Mr. McNett testified that the term "double tap" is a common term of art in the self defense industry meaning to place two quick shots on a target in quick succession. This reference stems from the common definition of "tap" meaning to "strike (someone or something) with a quick light blow or blows."[73] In this sense, Hornady's TAP mark has generic traits. Hornady's TAP mark, however, is also an acronym for Tactical Application for Police. That definition, in combination with the TAP term, is suggestive of the features of Hornady's product.[74]

Viewing all the evidences together and taking all reasonable inferences in Hornady's favor, the Court finds that Hornady's TAP mark is at a minimum suggestive. As such, Hornady's TAP mark is conceptually strong.

---

[72]*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999) (citing *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 143 (2d Cir. 1997)).

[73]Angus Stevenson & Christine Lindberg, *New Oxford Am. Dictionary* 1775 (3d ed. 2010).

[74]*See Limitless Worldwide, LLC v. AdvoCare Int'l, LP*, 2013 WL 687264, at *4 (D. Utah Feb. 25, 2013) (holding that a mark was suggestive because "it suggests that one who consumes Defendant's product will get a spark or boost of energy. However, if a person did not have knowledge that Defendant's product was an energy drink, they would have difficulty ascertaining the nature of its product").

Next, "under the commercial-strength inquiry, one looks at the marketplace to determine if a substantial number of present or prospective customers understand the mark, when used in connection with a business, to refer to a particular person or business enterprise."[75]

The parties dispute the admissibility of Hornady's evidence of the commercial strength of Hornady's TAP mark.  The Court has already addressed many of the parties' evidentiary disputes.[76]  To the extent Doubletap objects to the testimony of Mr. Davies as cumulative, the Court overrules its objection.  Mr. Davies was properly disclosed as a witness in this matter and may provide testimony as to those matters to which he has first hand knowledge.[77]

Hornady has submitted evidence that it has advertised products with its TAP mark in various magazines, on television, at trade shows, and on the Internet.[78]  Additionally, Hornady has spent hundreds of thousands of dollars advertising its TAP mark products and has given hundreds of thousands of dollars of Tap mark products away in marketing promotionals.[79] "Commercial strength may be obtained, in part, because of wide and intensive advertisement."[80] Viewing these evidences in the light most favorable to Hornady, the Court finds that Hornady has

---

[75]*1-800 Contacts, Inc. v. Lens.com, Inc.*, 755 F. Supp. 2d 1151, 1179 (D. Utah 2010) (internal quotation marks and citations omitted).

[76]*See* Docket No. 275.

[77]*See* Fed. R. Civ. P. 56(c)(4).

[78]*See* Docket No. 166 Ex. 3, at 3.

[79]*See id.* at 2–3.

[80]*1-800 Contacts*, 755 F. Supp. 2d at 1179 (internal quotation marks and citation omitted).

provided sufficient admissible evidence of commercial strength to support a finding that its TAP mark is strong.

G.      SUMMATION

Based on the preceding analysis, the Court finds that the balance of the factors weigh in Doubletap's favor.  That finding alone is not determinative of the issue.  As indicated at the outset, the key inquiry is "whether the consumer is 'likely to be deceived or confused by the similarity of the marks.'"[81]  The Court recognizes the similarity of the parties' products and the strength of Hornady's TAP mark.  However, those factors cannot outweigh the great dissimilarity between the parties' marks and the high degree of care exercised by the consumers of the parties' products.  Further, as to each of the remaining factors—actual confusion and intent—the Court finds that Hornady has failed to meet its burden.

For these reasons, the Court finds that no reasonable juror could find it likely that a consumer would be deceived or confused by the similarity between Hornady and Doubletap's marks.  Accordingly, the Court holds that there exists no genuine issue of material fact as to the likelihood of confusion.

## IV.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Doubletap's Motion for Summary Judgment (Docket No. 129) is GRANTED.  It is further

---

[81]*Heartsprings*, 143 F.3d at 554 (quoting *Two Pesos*, 505 U.S. at 780).

ORDERED that Hornady's Motion for Summary Judgment (Docket No. 131) is DENIED.  The Clerk of Court is directed to enter judgment in favor of Doubletap and against Hornady.

DATED   April 23, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge